IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLINE WHITFIELD, et al., | : |
| Plaintiffs, | : |
| v. | :     Civil Case No. GLR-18-2108 |
| LIBERTY MUTUAL GROUP INC., et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Stanley Steemer International, Inc.'s ("Stanley Steemer") Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 13) and Defendant Liberty Mutual Group Inc.'s ("Liberty Mutual")[1] Motion to Dismiss the Complaint (ECF No. 14). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Defendants' Motions and grant Plaintiff Charline Whitfield leave to amend the Complaint for the limited purpose of amending her breach of contract claim against Liberty Mutual as detailed below.

---

[1] Liberty Mutual notes in its Motion that Liberty Mutual Fire Insurance Company, the underwriter of the insurance policy at issue, is the proper Defendant not Liberty Mutual Group Inc. (Liberty Mutual's Mot. Dismiss Compl. at 1 n.1, ECF No. 14).

## I. BACKGROUND[2]

On an unspecified date, Whitfield obtained a homeowner's insurance policy (the "Policy")[3] through Liberty Mutual. (Compl. ¶ 9, ECF No. 1-3; Liberty Mutual's Mot. Dismiss Compl. ["Liberty Mutual's Mot."] Ex. 2 ["Policy"], ECF No. 14-2).[4] The Policy covered "losses caused by water that overflowed from a sump pump, including but not limited to mold remediation." (Compl. ¶ 9; see Policy at 22, 33–34). Whitfield owns the home covered under the Policy, located at 5604 Gwynndale Avenue, Baltimore, Maryland. (Compl. ¶ 8). Plaintiff Curtis Nelson has lived with Whitfield in her home since November 28, 2014. (Id.). Whitfield and Nelson invested time, money, and effort into finishing the basement in Whitfield's home, creating "their own private day spa of sorts," complete with a Jacuzzi. (Id. ¶ 29).

On April 6, 2017, heavy rainfall caused the sump pump in Whitfield's basement to overflow. (Id. ¶ 10). The same day, Whitfield alerted Liberty Mutual to the water damage and "requested immediate assistance." (Id. ¶ 11). Liberty Mutual instructed Stanley Steemer to "extract the water from the basement and dry the area," and it did so that night.

---

[2] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

[3] Liberty Mutual attaches the Policy to its Motion. (Liberty Mutual's Mot. Dismiss Compl. Ex. 2 ["Policy"], ECF No. 14-2). A Court may consider documents attached to a motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, Plaintiffs allege that Liberty Mutual breached the Policy, and Plaintiffs do not dispute the Policy's authenticity. Accordingly, the Court will consider the Policy when assessing Defendants' Motions.

[4] Citations to the Policy refer to the pagination the Court's Case Management and Electronic Case Files ("CM/ECF") system assigned.

(Id.). On April 7, 2017, Defendant Roto-Rooter Services Company ("Roto-Rooter") "attempted to install a new sump pump" in the home but installed it in such a way that it did not function properly. (Id. ¶¶ 12–13).

On May 5, 2017, heavy rainfall again caused water to overflow from the sump pump and flood the basement. (Id. ¶ 15). The flooding was "extensive" and resulted in "substantial property damage and mold growth." (Id. ¶ 16). Nelson first noticed the flooding three days later, on May 8, 2017, and contacted Liberty Mutual. (Id. ¶ 17).[5] On or about May 23, 2017, Liberty Mutual instructed Stanley Steemer to investigate mold growth in the basement. (Id. ¶ 23). The next day, Stanley Steemer inspected the basement and confirmed that there was "extensive mold growth throughout the entire basement." (Id. ¶ 24).

Stanley Steemer began mold remediation efforts at the end of May 2017, which lasted until approximately September 7, 2017. (Id. ¶¶ 28, 31). The remediation efforts were "very invasive." (Id. ¶ 28). Stanley Steemer "set up fans that ran [twenty-four] hours each day" and "workers constantly walked in and out of the house randomly several days per week" during the remediation process. (Id.). As a result of the second flood, Plaintiffs sustained approximately $15,374.00 in property damage, paid $648.00 for a third-party to remove damaged property from the house, and spent approximately $35,000.00 to fully restore the basement to its former state. (Id. ¶¶ 26–27, 35–36).

---

[5] Nelson also contacted Roto-Rooter to investigate the sump pump, and Roto-Rooter did so on May 9, 2017. (Compl. ¶¶ 19, 21).

On May 23, 2018, Plaintiffs filed suit against Liberty Mutual, Stanley Steemer, and Roto-Rooter in the Circuit Court for Baltimore County, Maryland, (ECF No. 1-3), alleging: negligence against Liberty Mutual, Stanley Steemer, and Roto-Rooter (Count I); and breach of contract against Liberty Mutual (Count II). (Compl. ¶¶ 37–43). Plaintiffs seek money damages and attorney's fees and costs. (Id. at 11). Liberty Mutual removed the case to this Court on July 10, 2018. (ECF No. 1).

On July 24, 2018, Stanley Steemer filed its Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. (ECF No. 13).[6] Plaintiffs filed an Opposition on July 31, 2018. (ECF No. 15). Stanley Steemer filed a Reply on August 13, 2018. (ECF No. 17).

On July 26, 2018, Liberty Mutual filed its Motion to Dismiss the Complaint. (ECF No. 14). Plaintiffs filed an Opposition on August 9, 2018. (ECF No. 16). Liberty Mutual filed a Reply on August 23, 2018. (ECF No. 23).

## II. DISCUSSION

### A. **Standard of Review**

The purpose of a motion made under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the

---

[6] Roto-Rooter filed an Answer on August 16, 2018, (ECF No. 18), and then filed an Amended Answer on August 17, 2018, (ECF No. 21).

4

claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege enough facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

B.  Analysis

Stanley Steemer and Liberty Mutual contend that Plaintiffs fail to state negligence claims against them. Liberty Mutual also maintains that Plaintiffs fail to state a claim for breach of contract. Plaintiffs counter that they have adequately pled both their negligence and breach of contract claims. The Court addresses Plaintiffs' claims in turn.

1.  Negligence

Under Maryland law,[7] to state a claim for negligence, the plaintiffs must allege: (1) "a duty owed by the defendant[s] to the plaintiff"; (2) "a breach of that duty"; and (3) "injury proximately resulting from that breach." Shilling v. Thomas, No. PWG-16-2696, 2017 WL 1035854, at *6 (D.Md. Mar. 16, 2017) (alteration in original) (quoting Barclay v. Briscoe, 47 A.3d 560, 574 (Md. 2012)). Without a duty, "there can be no negligence." Id. (quoting Premium of America, LLC v. Sanchez, 73 A.3d 343, 354 (Md.Ct.Spec.App. 2013)). As a result, "when analyzing a negligence action it is customary to begin with whether a legally cognizable duty exists." Id. (internal quotation marks omitted) (quoting Premium of America, 73 A.3d at 354). Accordingly, the Court considers whether each Defendant owed Plaintiffs a legally cognizable duty.

a.  **Stanley Steemer**

Plaintiffs allege that Stanley Steemer breached a duty it owed to Plaintiffs when it "negligently failed to have the mold remediation completed within [three to seven] days

---

[7] Maryland law applies to this diversity action. See Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

after the May 24, 2017 commencement of the remediation." (Compl. ¶ 40). Stanley Steemer asserts that Plaintiffs fail to identify the duty Stanley Steemer owed them that Stanley Steemer purportedly breached, and that Stanley Steemer never implicitly or explicitly agreed to complete the remediation in three to seven days.[8] Plaintiffs counter that, by agreeing to perform the mold remediation, Stanley Steemer assumed a duty that "specifically required Stanley Steemer to diligently and competently complete the mold remediation within [three to seven] days." (Pls.' Opp'n Stanley Steemer's Mot. at 5, ECF No. 15). The Court disagrees.

Here, Plaintiffs' negligence claim against Stanley Steemer fails because Plaintiffs fail to articulate the legally cognizable duty Stanley Steemer owed to Plaintiffs and how Stanley Steemer breached that duty. While Plaintiffs allege that Stanley Steemer had a specific duty to complete the mold remediation within three to seven days, Plaintiffs offer no basis for this duty beyond the bald assertion that "by agreeing to perform the mold remediation, [Stanley Steemer] assumed a duty to exercise that degree of care that an ordinary and reasonably prudent and careful person would exercise under similar circumstances," (Compl. ¶ 33), and that "[a] standard home mold remediation takes [three to seven] days," (id. ¶ 31). The only relevant allegations as to Stanley Steemer state that the remediation efforts were "very invasive" and that fans were running for twenty-four hours a day, with "workers constantly walk[ing] in and out of the house randomly several

---

[8] Stanley Steemer also argues that Plaintiffs are attempting to allege negligent infliction of emotional distress, which is not recognized as a tort in Maryland. Because the Court will conclude that Plaintiffs fail to state a negligence claim against Stanley Steemer, the Court declines to address this argument.

days per week for several months." (Id. ¶ 28). Viewing these allegations in a light most favorable to Plaintiffs, the Court is unable to conclude that Stanley Steemer owed Plaintiffs the specific duty they allege or that Stanley Steemer's remediation efforts constituted a breach of that duty. And, absent a duty, "there can be no negligence." Shilling, 2017 WL 1035854, at *6 (quoting Premium of America, 73 A.3d at 354).

The Court, therefore, concludes that the Plaintiffs fail to state a claim for negligence against Stanley Steemer. Accordingly, the Court will grant Stanley Steemer's Motion.

### b. Liberty Mutual

Plaintiffs' negligence claim against Liberty Mutual is premised on three purported breaches of a duty. First, Plaintiffs allege that Liberty Mutual breached its duty "to immediately, within [twenty-four to forty-eight] hours, investigate potential mold growth" after Nelson reported the flooding to Liberty Mutual. (Compl. ¶ 20). Second, Plaintiffs plead that Liberty Mutual was negligent in failing "to order a [three- to seven-]day remediation within [twenty-four to forty-eight] hours after its May 8, 2017 telephone discussion with [ ] Nelson." (Id. ¶ 36). Third, Plaintiffs allege that Liberty Mutual "breached a tort duty" it owed Plaintiffs "when it failed to honor its obligation to pay the cost to re-finish the basement once the mold remediation was complete." (Id. ¶ 40).

Liberty Mutual does not dispute that it has an obligation under the Policy to pay for covered losses in the event of a sump pump overflow resulting in mold growth. Rather, Liberty Mutual contends that this obligation does not give rise to a tort duty as a matter of law. The Court agrees.

8

Under Maryland law, "[a] contractual obligation, by itself, does not create a tort duty." Mesmer v. Md. Auto. Ins. Fund, 353 Md. 241, 253 (1999). Rather, "the duty giving rise to a tort action must have some independent basis" apart from the contract. Id. These rules apply in the insurance context. Nguti v. Safeco Ins. Co., No. IDC-15-0742, 2016 WL 316013, at *2 (D.Md. Jan. 14, 2016) (quoting Mesmer, 725 A.2d at 1058); cf. Young v. Travelers Ins. Co., No. 13-cv-02092-AW, 2013 WL 5308289, at *3 (D.Md. Sept. 19, 2013) ("Maryland courts have not recognized the existence of a tort duty in a suit against an insurer for failure to process or settle a first-party insurance claim, and Plaintiffs have not identified any independent basis, apart from the contract itself, for the existence of any duty owed to them.").

Here, Plaintiffs' allegations arise from the Policy, not from an independent tort duty owed by Liberty Mutual. Indeed, Plaintiffs allege that "[b]y agreeing to insure against damage from mold and provide for mold remediation as part of the Policy, Liberty Mutual assumed a duty to exercise that degree of care that an ordinary and reasonably prudent and careful person would exercise under similar circumstances." (Compl. ¶ 20) (emphasis added). With regard to Liberty Mutual's response time, Plaintiffs plead that Liberty Mutual was required to "immediately, within [twenty-four to forty-eight] hours, investigate potential mold growth" after Nelson contacted Liberty Mutual. (Id.). Even if Liberty Mutual had a duty to investigate the mold growth and failed to do so, this failure could not be the basis for a tort claim because the duty would stem from Liberty Mutual's duties under the Policy, not from any separate and distinct tort duty. Nguti, 2016 WL 316013, at *2 (quoting Mesmer, 725 A.2d at 1058). Plaintiffs' claim that Liberty Mutual breached a

9

duty to ensure that Stanley Steemer completed the remediation in three to seven days fails for the same reason that Plaintiffs' claim against Stanley Steemer fails: they offer no basis for this tort duty apart from the Policy. Id. Likewise, Plaintiffs' allegations that Liberty Mutual breached a tort duty to pay the cost of re-finishing the basement miss the mark. This is a contractual duty imposed upon Liberty Mutual under the Policy, not an independent tort duty. Id. As a result, all of Plaintiffs' negligence claims premised upon Liberty Mutual's purported breaches of the Policy fail to state a claim.

Nevertheless, Plaintiffs assert in their Opposition that Liberty Mutual voluntarily assumed a tort duty when it agreed to undertake the hiring of Stanley Steemer to investigate and remediate the water and mold damage. The Court is not persuaded. The Complaint is devoid of any allegations that Liberty Mutual voluntarily assumed a duty either to ensure that Stanley Steemer began the remediation within twenty-four to forty-eight hours of Nelson contacting Liberty Mutual or to ensure that Stanley Steemer completed the remediation in three to seven days. As discussed above, Plaintiffs attempt to impose a tort duty on Liberty Mutual because it "agree[d] to insure against damage from mold and [to] provide for mold remediation as part of the Policy." (Id. ¶ 20). Any duty Plaintiffs attempt to assert, therefore, is based on Liberty Mutual's contractual obligations under the Policy, and not an independent duty sounding in tort.

Thus, the Court concludes that Plaintiffs fail to state a negligence claim against Liberty Mutual. Accordingly, the Court will grant Liberty Mutual's Motion as to Plaintiffs' negligence claim.

## 2. Breach of Contract

Liberty Mutual advances several arguments in favor of dismissing Plaintiffs' breach of contract claim, including that Nelson does not have standing, and that Plaintiffs fail to state a claim.[9] Plaintiffs do not dispute Liberty Mutual's standing argument, but they contend that they have adequately stated a claim for breach of contract. The Court agrees with Liberty Mutual.

### a. Standing

"Maryland follows the law of objective contract interpretation." Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 546 (Md. 2003). Under this approach to contract interpretation, the Court "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1310 (Md. 1985). If "the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." Id. In this situation, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Id.

The construction of an unambiguous contract is for the Court alone to determine. Wells v. Chevy Chase Bank, F.S.B., 768 A.2d 620, 630 (Md. 2001). Thus, if the Court

---

[9] Defendants also argue that Plaintiffs are not entitled to emotional distress damages from a purely contractual dispute. Because the Court will conclude that Plaintiffs fail to state a breach of contract claim, the Court declines to address this argument.

determines that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law." Cochran v. Norkunas, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting Wash. Metro Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir. 2007)).

When construing an insurance policy, "[u]nless there is an indication that the parties intended to use words in the policy in a technical sense, [the words] must be accorded their customary, ordinary, and accepted meaning." Md. Cas. Co. v. Blackstone Int'l Ltd., 114 A.3d 676, 681 (Md. 2015) (quoting Lloyd E. Mitchell, Inc. v. Md. Cas. Co., 595 A.2d 469, 475 (Md. 1991)). Maryland does not follow the rule that insurance policies should be construed against the insurer as a matter of course. Dutta v. State Farm Ins. Co., 769 A.2d 948, 957 (Md. 2001). But if the allegations in the Complaint make it uncertain whether the Policy covers a claim, "any doubt must be resolved in favor of the insured." Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 863–64 (Md. 1995). Even so, as a general rule, "a contract cannot be enforced by or against a person who is not a party to it." Cecilia Schwaber Tr. Two v. Hartford Accident & Indem. Co., 437 F.Supp.2d 485, 489 (citing Crane Ice Cream Co. v. Terminal Freezing & Heating Co., 128 A. 280, 281 (Md. 1925)).

Here, the Policy at issue makes no reference to Nelson as a covered party. In fact, the Policy names "Charline Whitfield" as the insured party and defines "insured" as "you and residents of your household who are: [y]our relatives; or [o]ther persons under the age of [twenty-one] and in the care of any person named above." (Policy at 6). None of this language is ambiguous, nor is there any indication that it is being used in a technical sense. The Court, therefore, reads these words to have their ordinary, accepted meaning. Md. Cas.

12

Co., 114 A.3d at 681 (quoting Lloyd, 595 A.2d at 475). The Complaint only alleges that Nelson began living with Whitfield in her home on November 28, 2014. (Compl. ¶ 8). Plaintiffs do not allege that Nelson is Whitfield's relative or that he is under the age of twenty-one. Applying the ordinary meaning of the Policy terms to these allegations, Nelson is not a party to the Policy, nor is he an "insured." Nelson, therefore, cannot enforce the Policy because he is not a party to it and he is not covered under it.[10] See Cecilia Schwaber, 437 F.Supp.2d at 489 (citing Crane Ice Cream Co., 128 A. at 281).

Thus, the Court concludes that Nelson lacks standing to bring a breach of contract claim against Liberty Mutual. Accordingly, the Court will dismiss the breach of contract claim as to Nelson. The Court next considers whether Whitfield states a breach of contract claim against Liberty Mutual.

### b. Breach of Contract Claim

Whitfield alleges that Liberty Mutual "breached the terms of the Policy" by: (1) failing to investigate the flooding in the basement within twenty-four to forty-eight hours of its conversation with Nelson; (2) failing to have an appropriate remediation completed in three to seven days after investigating the flooding; and (3) failing to compensate Whitfield for her property damage and associated costs. (Compl. ¶ 43). Liberty Mutual argues that Whitfield fails to state a breach of contract claim because the Complaint does

---

[10] Further, Plaintiffs do not dispute that Whitfield alone is the policy holder, and they make no attempt to dispute the fact that Nelson is not referenced in the Policy. On this basis alone, the Court could dismiss Nelson's breach of contract claim. Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.").

13

not reference any specific contract terms Liberty Mutual allegedly breached.[11] The Court agrees with Liberty Mutual.

Under Maryland law, "a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness <u>facts</u> showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" <u>Polek v. J.P. Morgan Chase Bank, N.A.</u>, 36 A.3d 399, 416 (Md. 2012) (quoting <u>Cont'l Masonry Co. v. Verdel Constr. Co.</u>, 369 A.2d 566, 569 (Md. 1977)); <u>see</u> <u>McGowens v. Bank of America</u>, No. ELH-14-1101, 2015 WL 1137749, at *9 (D.Md. Mar. 12, 2015) ("[P]laintiff has failed to identify any terms in the promissory note, Deed of Trust, or any other contract that defendant purportedly breached.").

In the Complaint, Whitfield does not identify any terms in the Policy that Liberty Mutual purportedly breached.[12] Whitfield states, in a conclusory manner, that Liberty

---

[11] Liberty Mutual also argues that Whitfield does not plead that she has met the conditions for recovery under the Policy, which, it asserts, is a prerequisite for a breach of contract claim. Specifically, Liberty Mutual states, "Plaintiffs fail to allege that they met the pre-conditions to recovery, including paying their premium, submitting a detailed inventory of Whitfield's damaged personal property, and actually repairing or replacing damaged property." (Liberty Mutual's Mot. at 12). The Court notes that the Complaint is devoid of such facts but declines to address this argument because the Court will conclude that Whitfield fails to state a breach of contract claim based on her failure to specify which Policy terms Liberty Mutual allegedly breached.

[12] In their Opposition to Liberty Mutual's Motion, Plaintiffs allege that Liberty Mutual violated the implied duty of good faith and fair dealing and attempt to add references to the specific Policy terms which they allege Liberty Mutual breached. Plaintiffs are, however, "bound by the allegations contained in [their] complaint and cannot, through the use of motion briefs, amend the complaint." <u>Zachair, Ltd. v. Driggs</u>, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), <u>aff'd</u>, 141 F.3d 1162 (4th Cir. 1998). Accordingly, the Court does not consider this claim or Plaintiffs new factual allegations.

Even if Plaintiffs were to bring breach of the implied duty of good faith and fair dealing claim, it would fail based on the facts presently alleged. "The implied duty of good

14

Mutual "breached the terms of the Policy." (Compl. ¶ 43). She does not point to any Policy terms that require Liberty Mutual to investigate a claim within twenty-four to forty-eight hours or to have a remediation completed three to seven days after its investigation. Because Whitfield does not allege definite facts establishing Liberty Mutual's contractual obligations, her breach of contract claim fails. Polek, 36 A.3d at 416 (quoting Cont'l Masonry Co., 369 A.2d at 569); see McGowens, 2015 WL 1137749, at *9.

Thus, the Court concludes that Whitfield fails to adequately plead a claim for breach of contract. Accordingly, the Court will grant Liberty Mutual's Motion as to Whitfield's breach of contract claim.

In its Motion, Liberty Mutual requests dismissal of the breach of contract claim "with Whitfield being allowed to amend the [C]omplaint" to allege breach of contract for "damages recoverable under the Policy." (Liberty Mutual's Mot. at 3, 12). Rule 15(2) provides, in relevant part, that a party seeking to amend its pleading more than twenty-one days after service may do so "only with the opposing party's written consent." Because Whitfield has Liberty Mutual's consent, the Court will grant Whitfield leave to amend her Complaint for the limited purpose of alleging a breach of contract claim for damages recoverable under the Policy.

---

faith prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." Donnelly v. Branch Banking & Tr. Co., 971 F.Supp.2d 495, 509 (D.Md. 2013) (quoting Cutler v. Wal-Mart Stores, Inc., 927 A.2d 1, 11 (Md.Ct.Spec.App. 2007). Here, the Complaint lacks any allegations that Liberty Mutual prevented Whitfield from fulfilling her contractual obligations under the Policy. Whitfield, therefore, would fail to state a claim for breach of the covenant of good faith and fair dealing based on the facts presently pled.

## III.  CONCLUSION

For the foregoing reasons, the Court will grant Stanley Steemer's Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 13) and Liberty Mutual's Motion to Dismiss the Complaint (ECF No. 14). The Court will also grant Whitfield leave to file an Amended Complaint alleging breach of contract for damages recoverable under the Policy against Liberty Mutual. A separate Order follows. Entered this 8th day of March, 2019.

/s/
George L. Russell, III
United States District Judge